UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CORVON L. JONES,

        Plaintiff,

        v.                                Case No. 15-CV-51

OMARLO PHILLIPS,
KENT TUSCHL,
JOSEPH ZAWIKOWSKI, and
JACOB SPANO,

        Defendants.

# ORDER

Corvon Jones, a Wisconsin state prisoner who is currently confined at Jackson Correctional Institution (JCI), filed an action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his civil rights during his arrest. The court screened Jones's complaint and allowed him to proceed with his Fourth Amendment claim that defendants used excessive force during his arrest. This matter comes before the court on several pending motions.

On February 12, 2016, defendants filed a motion for summary judgment, along with a supporting brief, declarations, and proposed findings of fact. (ECF Nos. 44-51.)

Jones also timely filed a motion for summary judgment. (ECF No. 53.) However, he did not file a supporting brief or proposed findings of fact as required by this district's local rules. Civil L. R. 56(b)(1)(A)-(D). On February 26, 2016, two weeks after the deadline for filing dispositive motions had passed, Jones filed an amended motion for partial summary judgment. (ECF No. 54.) This time he did file a supporting brief, along with a sworn affidavit supporting the motion. (ECF Nos. 55, 56.) On April 4, 2016, Jones also filed a motion to appoint counsel. (ECF No. 62.)

## I. RELEVANT FACTS

The following facts are taken from defendants' proposed findings of fact (ECF No. 45), plaintiff's sworn "declaration and affidavit" (ECF No. 56), and plaintiff's sworn complaint (ECF No. 1), which the court construes as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

On October 27, 2014, Milwaukee Police Officers Omarlo Phillips, Kent Tuschl, Joseph Zawikowski, and Jacob Spano were on bicycle patrol duty in the area of North 41 Street and West Burleigh Street. (ECF No. 45, ¶¶ 1-2.) All four officers were in their uniforms. (*Id.*, ¶ 3.) They saw a beige Mercury Sable with illegally tinted windows that was illegally parked. (*Id.*, ¶ 4.) The vehicle had two adult occupants: a female driver and Jones, in the passenger seat. (*Id.*, ¶¶ 8-9.)

Phillips and Spano approached the passenger side of the vehicle. (*Id.*, ¶ 5.) Phillips positioned his bicycle adjacent to the passenger side door. (*Id.*, ¶¶ 6-7.) Spano

2

positioned his bicycle behind Phillips towards the rear of the vehicle in a "cover position." (*Id*.) Tuschl and Zawikowski approached the driver's side of the vehicle. (*Id*., ¶ 5.) Tuschl approached the driver, told her why he had approached her, and asked her for identification. (*Id*., ¶ 10.) Tuschl asked Jones to roll down the passenger side window to talk to Phillips. (*Id*., ¶ 11.)

Jones rolled down the window and Phillips asked him for his identification. (*Id*., ¶¶ 12-13.) Jones stated that he did not have identification. (*Id*., ¶ 14.) As Phillips attempted to retrieve a memo pad to write down Jones's name, the two engaged in a conversation during which Jones indicated that he did not want to give Phillips his name or interact further with Phillips. (*Id*., ¶ 15.) Jones then forcefully opened the passenger door of the vehicle, struck the front tire of Phillip's bicycle, and attempted to get out of the vehicle. (*Id*., ¶ 18.) Phillips attempted to push the passenger door closed to prevent Jones from exiting the vehicle, but Jones pushed his way out and fell to the ground. (*Id*., ¶ 21.)

The parties dispute what happened next. Defendants assert that Jones stood up, at which time Phillips wrapped his arms around him to prevent him from fleeing. (*Id*., ¶ 22.) Jones responded by "head butting" Phillips. (*Id*., ¶¶ 23-24.) The four officers spent the next ten minutes yelling at Jones to "stop resisting" and attempting to restrain him, using tactical methods. (*Id*., ¶¶ 32, 62, 65.) The officers used five to six knee strikes to the abdomen (*id*., ¶ 36), two to three hand focus strikes to the jaw area (*id*., ¶ 46), two

hand focus strikes to the ribs and lower back (*id*., ¶ 53), two hand focus strikes to the abdomen (*id*., ¶ 70), several more hand focus strikes to the shoulders and lower back area (*id*., ¶ 72), and two bursts of OC spray (*id*., ¶¶ 80, 82). The defendants explain that the focus strikes had no effect on Jones, who regained his feet numerous times during the altercation and kept attempting to run away. (*Id*., ¶¶ 26, 31, 42, 44-45, 55, 58.) Jones twisted his body, pushing and pulling away from the defendants, and yelling "I'm not giving up!" and "Fuck y'all." (*Id*., ¶¶ 30, 33, 57, 77.)

Although the first burst of OC spray had no effect on Jones, the second burst of spray stunned Jones sufficient to enable the officers to handcuff him. (*Id*., ¶¶ 81-82.) Defendants indicate that Jones inflicted numerous injuries on each of them during the altercation. (*Id*., ¶ 90.) Phillips had a mandibular contusion, an abrasion on his lower lip, and a sprained right shoulder. (*Id*.) Spano had significant bruising and swelling on his hands and abrasions and pain in both knees. (*Id*.) Tuschl had a sprained thumb, a fracture on his right hand, and significant bruising on his right knee. (*Id*.) Zawikowski had a strained hamstring, strained left shoulder, abrasions on his knees, and a sprained left thumb. (*Id*.)

Jones's version of the events is quite different. He admits that he attempted to exit an illegally parked vehicle without permission. (ECF No. 54.) However, he asserts that, once he pushed out of the car and fell to the ground, he did nothing other than cover his face for protection. (ECF No. 56, ¶¶ 9, 11.) He says that Phillips punched him

4

in the mouth several times, necessitating seven stitches in his lip. (*Id.*, ¶ 5.) Tuschl and Zawikowski kneed and kicked Jones on the left side of his body until Jones could not move. (*Id.* ¶ 7.) Tuschl gained control over Jones's left arm, and Zawikowski bent his right arm back until it reached his neck, tearing several ligaments in the process. (*Id.*, ¶ 6.) Phillips and Tuschl then stomped on Jones's head while he was on the ground with both arms behind his back and under arrest. (*Id.*) Spano punched Jones several times on the right side of his head, kicked him in the ribcage, and placed him in an illegal chokehold and headlock. (*Id.*, ¶ 8.) Spano's chokehold allegedly caused Jones to go unconscious. (*Id.*) Jones believes that Zawikowski and Spano then OC sprayed him several times, causing him to "wake back up." (ECF No. 1 at 3.) Jones asserts that he never resisted arrest or said "I ain't giving up." (ECF No. 56, ¶¶ 9, 11.) To the contrary, he allegedly laid on the ground and tried to cover his face. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

A party asserting that a fact is genuinely disputed, or not disputed, must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

As a preliminary matter, the court will deny Jones's motion for summary judgment filed on February 12, 2016. Under this district's Civil Local Rules, when filing a motion for summary judgment the movant must provide a memorandum of law and a statement of proposed facts, which statement is to include specific references to supporting affidavits, declarations, parts of the record or other supporting material. Civil L. R. 56(b)(1)(A)-(D). Jones provided neither. Therefore, the court will deny his February 12 motion for summary judgment.

The court will also deny Jones's motion for partial summary judgment filed on February 26, 2016. On July 13, 2015, the court issued a scheduling order, setting February 12, 2016, as the deadline for filing dispositive motions. (ECF No. 27). Jones did not file his motion for partial summary judgment until two weeks after the deadline. Therefore, the court will deny his motion for partial summary judgment as untimely.

However, when analyzing the defendants' motion for summary judgment, the court will consider the materials and arguments Jones provided.

<u>Excessive Force</u>

"In order to establish an excessive force claim under § 1983, plaintiffs must demonstrate that a state actor's use of force was 'objectively unreasonable' under the circumstances." *Thomas v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). In evaluating what is "reasonable," the court looks at: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; (3) whether the suspect was actively resisting arrest; and (4) whether the suspect was attempting to evade arrest by flight. *Id*.

"An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of the circumstances at the time of the arrest, the officer used force greater than necessary to make the arrest.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). The reasonableness of a particular use of force is judged "from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Weinmann v. McClone*, 787 F.3d 444, 448-49 (7th Cir. 2015) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014)). To that end, the court must allow for the fact that police officers are often forced to make split-second judgments about the amount of force that is necessary in circumstances that are "tense," "uncertain," and "rapidly evolving." *Id*. (quoting *Plumhoff*, 134 S. Ct. at 2020).

The parties dispute the type and amount of force that was used to restrain Jones during and after his arrest. Jones asserts, by way of sworn declaration and affidavit, that after he pushed out of the car and fell to the ground, the defendants kicked, punched, stomped on, and choked him unconscious even though they had full control of his arms and legs. He includes incident reports and hospital records from that day as evidence of what occurred. The defendants, on the other hand, assert that Jones resisted the entire time, that they never kicked, stomped, or choked Jones, that he never went unconscious, and that they only used "tactical" methods, such as focus strikes, to restrain Jones. They assert that they stopped using force once Jones was on the ground and handcuffed, and that the only use of force after he was on the ground was leg stabilization and leg shackling.

If Jones's version of the facts is found persuasive by a reasonable jury, sufficient evidence exists from which the jury could conclude that the force applied by the officers was objectively unreasonable. Thus, the defendants' motion that this court enter an

8
Case 2:15-cv-00051-WED   Filed 06/13/16   Page 8 of 14   Document 63

order finding as a matter of law that the force they used against Jones was reasonable will be denied.

### *Heck v. Humphrey*

Defendants further assert that Jones's entire action is *Heck* barred because he was convicted of "Resisting an Officer Resulting in Substantial Bodily Harm" under Wis. Stat. § 946.41(2r). Under the *Heck* doctrine, a plaintiff cannot maintain a 42 U.S.C. § 1983 action where a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). "The rule of *Heck v. Humphrey* is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006).

To maintain an action under § 1983 for alleged harm "caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck,* 512 U.S. at 486-87. "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*. at 487.

9

The Seventh Circuit Court of Appeals has held that a plaintiff can proceed on an excessive force claim under §1983 to the extent that the facts underlying the claim are not inconsistent with the essential facts supporting the conviction for resisting arrest. *See Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014); see also *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). Thus, a plaintiff that is found guilty of resisting arrest could not maintain a § 1983 action premised on the claim that he did not resist being taken into custody, but could proceed on claims that the police used excessive force in effecting custody or after doing so. *Evans v. Poskon*, 603 F.3d at 364; *see also VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) ("Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages.").

Defendants' primary contention is that a fact underlying this claim, *i.e.*, that Jones did not resist arrest, is inconsistent with the essential facts supporting his conviction for "Resisting an Officer Resulting in Substantial Bodily Harm." The statute Jones was convicted under provides that "whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority… is guilty of a Class H felony." Wis. Stat. § 846.21(2r). Indeed, Jones asserts, "I did not resist arrest, only blocked and shielded my face with my hands the best way I could." (ECF No. 55 at 2).

Jones's assertion that he did not resist arrest is incompatible with his conviction. *See Evans v. Poskon*, supra, 603 F.3d at 364. To the extent Jones's § 1983 claim is based on the allegation that he did not resist arrest, it is barred by *Heck*.

However, Jones also asserts that defendants continued to kick, stomp, and choke him after they had full control over his body, while he was on the ground, in handcuffs, and under arrest. These claims of excessive force "in effecting custody and after his arrest" are not inconsistent with his conviction for resisting arrest. *See Evans v. Poskon*, 603 F.3d at 364. To the extent that his § 1983 claim is based on these allegations, it is not barred by *Heck*.

## Qualified Immunity

Defendants also assert that they are entitled to qualified immunity. "The affirmative defense of qualified immunity protects government officers from liability for actions taken in the course of their official duties if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine if qualified immunity applies, the court employs a two-prong test: (1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." *Id.* "The purpose of the doctrine of qualified immunity is

11

to shield public officers from liability 'consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it.'" *Walker v. Benjamin*, 293 F.3d 1030, 1040-41 (7th Cir. 2002) (quoting *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)).

Defendants contend that "there is simply no caselaw (sic) which suggests that police officers may not use knee, focus strikes and OC spray to subdue a violent and actively resisting subject." (ECF No. 51 at 17). Further, they argue that the relevant case law pertaining to excessive force does not support the proposition that the defendants violated any clearly established right of Jones. (ECF No. 51 at 18).

However, as explained above, Jones asserts that defendants continued to kick, stomp, and choke him after they had full control over his body, while he was on the ground, in handcuffs, and under arrest. At the time of the arrest, it was well established that police officers are not permitted to gratuitously beat an arrestee once he has been restrained. *See Frazell v. Flanigan*, 102 F.3d 877, 885 (7th Cir. 1996) ("[I]t is one thing to use force in subduing a potentially dangerous or violent suspect, and quite another to proceed to gratuitously beat him. . . . The fact that a certain degree of force may have been justified earlier in the encounter to restrain [the plaintiff] does not mean that such force still was justified once [he] had been restrained."), *overruled on other grounds by McNair v. Coffeey*, 279 F.3d 463 (7th Cir. 2002).

To the extent that Jones asserts that defendants continued to assault him while he was on the ground, in handcuffs, and after he was placed under arrest, the defendants are not entitled to qualified immunity for force used during that time. See *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007) ("Viewing the facts in the light most favorable to the plaintiff, a reasonable officer would have known that administering closed-fist punches and flashlight blows, including ones to the head, after the arrestee was handcuffed, continuing to strike him after he had stopped resisting arrest and failing to place him in the proper position after hobbling him violated the individual's Fourth Amendment right to be free from excessive force."). Therefore, defendants are not entitled to a finding on summary judgment that they are protected from Jones's claims by qualified immunity.

## Jones's Motion for Appointment of Counsel

On April 4, 2016, Jones filed a motion for the appointment of counsel. The court has discretion to recruit counsel for litigants unable to afford one in a civil case. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). The court examines "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Id.* (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). Because this action is proceeding to trial, the court will grant Jones's motion to appoint counsel.

**WHEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 44) is **GRANTED** in part and **DENIED** in part**.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (ECF No. 53) and plaintiff's motion for partial summary judgment (ECF No. 54) are **DENIED**.

**IT IS ALSO ORDERED** that plaintiff's motion for appointment of counsel (ECF No. 62) is **GRANTED.**

Dated at Milwaukee, Wisconsin this 13th day of June, 2016.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge